**Betty Jean FIELDS, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14937.**

Court of Criminal Appeals of Oklahoma.

April 9, 1969.

Robert E. Walker, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., Phil Scott, Legal Intern, for defendant in error.

BUSSEY, Judge.

Betty Jean Fields, hereinafter referred to as defendant, was charged by information in the Common Pleas Court of Oklahoma County with the crime of Engaging in an Act of Lewdness. The information more specifically alleged that the defendant, on or about March 16, 1968, in said county, did offer herself for the purpose of sexual intercourse, for hire, to David Kuykendall and Thomas Kaidek by presenting herself in a room and removing all of her clothing.

On May 9, 1968, a hearing was had on a Motion to Suppress and a Demurrer; the court heard the evidence and overruled the Motions.

This case came on for trial on May 22, 1968. The defendant stipulated and agreed that the evidence heard on the Motion to Suppress and the Demurrer be the evidence heard by the court. The defendant also waived a jury, and the court, after considering the evidence, found the defendant guilty as charged.

Thereafter, a Motion for New Trial was filed on the defendant's behalf, and the same was overruled. On May 27, 1968, it was ordered and adjudged by the court that defendant be imprisoned in the County Jail for a period of 30 days, and pay the costs of $54.70 and in default of payment of the costs be further imprisoned in the County Jail for a period not exceeding one day for every $1.00 of costs. From this judgment and sentence, a timely appeal has been perfected to this Court.

On appeal the defendant argues that this case should be reversed under a single proposition, to-wit:

"Error of the Court in overruling defendant's Motion to Suppress the Evidence, which was obtained as a result of the defendant's arrest herein, for the reason that said arrest and search was illegal and in violation of the defendant's statutory and constitutional rights."

In order to deal with this proposition, we deem it necessary to briefly set forth the evidence.

David Kuykendall testified, as a witness for the defendant on the Motion to Suppress, that the first time he saw the defendant was a week before the happening of the alleged offense on March 16, 1968. He stated that he and Thomas Nash Haidek, Jr., were driving around when a male friend of some girls stopped them. The male friend wanted to know if they were looking for a trick and went inside and sent out Betty Fields and another girl. They went to the girls' apartment and had relations. This was the week before March 16, 1968.

He further testified that they then went to the police and offered to help arrest the girls. The police told them that if they were driving around the Fish Fry and the girls stopped them, that they would come in and do something, but if they stopped the girls, that there was nothing that they could do.

He additionally testified that on March 16, 1968, he and Mr. Haidek were driving around the Fish Fry and the girls stopped

them. The girls asked them about how much money they had and they told them that they had around $7.00 apiece, so the girls took them to their apartment, each boy gave a girl $7.00. One girl put her money under the light and the other put her money in her purse. The girls then started taking off their clothes. The officers then knocked on the door and the defendant asked who was there. One of the officers replied that it was Charles. Kuykendall opened the door and the vice squad came in and told the girls that they were under arrest for prostitution and tried to advise them of their rights. The girls then put on their clothes and went to jail.

The witness Thomas Nash Haidek, Jr., on the Motion to Suppress, testified to substantially the same facts as that offered by David Kuykendall, but this witness did not remember who opened the door.

The pertinent part of the testimony of Richard Mullins, an Officer of the Oklahoma City Police Department, as it relates to the issue here presented, was that he knocked on the door of the apartment occupied by the defendant, and that she opened the door, clothed only in a bra, whereupon he arrested the defendant and her companion, who was attired in a garter belt. This witness testified that the two men, Kuykendall and Haidek, were fully clothed.

It appears to be counsel's contention that the act of lewdness was not committed in the presence, nor did the arresting officer have knowledge that the offense was being committed, that therefore the officer had no grounds for arresting the two women and that consequently all testimony and evidence in connection with the arrest was inadmissible.

We are of the opinion that the brief submitted by the Attorney General, succinctly answers this proposition, and we therefore adopt his language:

"The law in this area is clear. We are advised by statute as to the circumstances upon which a peace officer may make an arrest without a warrant. Title 22 O.S. 1961, § 196, provides in relevant part:

'A peace officer may, without a warrant, arrest a person:

1. For a public offense, committed or attempted in his presence.'

"Here the State submits, the sole question before this Court is whether or not the facts upon which Officer Richard Mullins acted constitute, under the law, sufficient grounds to sustain the arrests and seizure. It is the State's position that these facts unquestionably were of such nature.

"The State contends that counsel's argument must necessarily fall because it is based on a faulty premise. He would seem to want this Court to believe that the officer arrested this defendant before any offense was committed in his presence. If such be the case, then of course, his argument is sound and this case would require reversal. In truth and fact, however, the testimony of Officer Mullins was that through the cooperation and information of two boys he and another officer went to the door of an apartment and knocked. Miss Fields opened the door and they went in and observed that she was clad in a bra only and Miss Taylor in a garter belt. Then and only then did he make the arrest. Counsel himself, at pages 39–40 of the casemade, elicits the testimony that is decisive here:

'We asked them (the boys) to meet us at the detective bureau around ten o'clock on the 16th which was the next night. They did. We advised them if they would cruise in the area of the Fish Fry perhaps they would be solicited by some females. We had knowledge that this was going on at this establishment prior to these boys talking to us. I would say, it was approximately 10:15 they was driving south. I was a block off, I couldn't see what happened and I couldn't testify as to what was said, but they told me that they was flagged down by Miss Taylor and Miss Fields here. Had a conversation with them about an im-

moral date. We observed them drive the car which belonged to the boys with the two defendants in it to Six North Geary and park it north of the intersection and go into the rear door of 329 Northeast 6th. In about three minutes we entered the house. We could hear talking from room 103 and felt the voice was that of the boys and we wasn't sure about the girls. *I knocked on the door. Miss Fields opened the door. At this time, I entered, and observed her to be clad in a bra only and Miss Taylor wearing a garter belt.* Both boys were fully clothed. *I placed them under arrest and advised them of their rights.'* (Emphasis added)

"It is clear that the information and co-operation of the boys led to observation and the things observed led to the arrest. Therein lies the point that defeats counsel's argument. The arresting officer observed with his own eyes that this defendant was clad only in a bra before he made the arrest. The officer acquired the knowledge that an offense was being committed through the sensory perception of his eyes. He approached the defendant's apartment and was outside her apartment where he had a legal right to be. Smith v. State, Okl.Cr., 311 P.2d 275. This defendant opened the door and her actions and appearance was in full view of the officer.

"This Court has held many times that where a police officer observes one committing a violation of law in his presence, it is unnecessary for him to procure a warrant or search warrant before arresting such party. An offense is committed or attempted in the presence of an officer where such officer is apprised by any of his senses that a misdemeanor is being committed by a person prior to the arrest. Franklin v. State, Okl.Cr., 279 P.2d 1116."

 To summarize our holding in the instant case, we are of the opinion that the legality of the arrest hinged on the conflicting testimony of witnesses Kuykendall and Officer Mullins, as to who opened the door to the apartment. This presented for the trial court, a question of fact, and he chose to believe the testimony of the officer which supports the legality of the arrest.

We ·are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed, for we have repeatedly held that when the evidence is conflicting, it is the duty of the trier of fact to resolve such conflict and such determination will not be disturbed on appeal if there is any evidence reasonably supporting the findings of fact.

Judgment and sentence affirmed.

BRETT, P. J., and NIX, J., concur.